IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| ERICA A. DOERHOFF, Individually and as a representative of the Class of Customers of General Growth Properties, Inc., who were charged a "Monthly Servicing Fee" on GGP Gift Cards,<br><br>Plaintiff,<br><br>v.<br><br>GENERAL GROWTH PROPERTIES, INC.<br><br>Defendant. | Case No. 06-04099-CV-C-SOW |

ORDER

Before the Court is Defendant's Motion to Compel Arbitration and to Stay Proceedings Pending Arbitration (Doc. # 15). Defendant General Growth Properties, Inc. ("GGP") moves this Court, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"), for an Order compelling plaintiff Erica A. Doerhoff ("Doerhoff") to arbitrate this dispute on an individual basis and stay this action pending arbitration. Doerhoff refuses to arbitrate her claim. For the reasons stated below, defendant's motion is denied.

I. Background

On May 11, 2006, this case was removed from Missouri state court based on the Class Action Fairness Act. This case is a putative nationwide class action brought by Doerhoff individually and as a representative of the class of customers of GGP, who were charged a $2.00 Monthly Service Fee (the "Monthly Fee"). The Monthly Fee is charged on GGP Mall Gift Cards (the "Gift Cards"). The terms and conditions state, "Subject to applicable law, we may deduct a monthly Service Fee of $2.00, however, we will waive that Service Fee for the first 12 months

after the purchase date."

When a customer purchases a Gift Card, there is a written agreement supplied with the card setting forth the terms and conditions for the Gift Cards - the GGP Mall Gift Cardholder Agreement (the "Gift Card Agreement"). The Gift Card Agreement expressly authorizes and discloses the Monthly Fee and also includes a binding arbitration provision (the "Arbitration Provision").

The Gift Cards at issue in this case are multi-use, prepaid gift cards that are variably loaded with a monetary value of any amount between $20 and $500. Since July 2004, GGP has partnered with American Express Travel Related Services Company, Inc. ("American Express") to jointly administer the GGP Mall Gift Card Program (the "Program"). American Express is the issuer of the Gift Cards. GGP distributes the Gift Cards, which are available for sale at GGP Customer Service Centers and GGP Mall Management Offices. The Gift Cards are marketed and sold for exclusive use in shops and restaurants located in GGP Shopping Centers throughout the United States.

During the process of selling a Gift Card, the GGP employee utilizes the Terms and Conditions Counter Mat (the "Counter Mat") as a visual reference tool to explain the specific features and benefits of the Gift Card to the customer. The Mat includes express written disclosures about the Monthly Fee at issue, and relevant here, includes the following disclosure regarding arbitration: PLEASE SEE THE TERMS AND CONDITIONS FOR IMPORTANT INFORMATION REGARDING BINDING ARBITRATION FOR DISPUTES RELATED TO THE GGP GIFT CARD AND YOUR WAIVER OF RIGHTS TO PARTICIPATE IN A CLASS ACTION AGAINST US. The Counter Mat also states as follows: "The terms "we," "us," "our"

2

refer to American Express Travel Related Services Company, Inc.

Once the customer purchases the card, he or she receives the plastic Gift Card in the Gift Card packaging, the purchase receipt, and the Gift Card receipt. The packaging contains the Gift Card, the Gift Card Agreement (including the Arbitration Provision), and the Mall List.

Plaintiff alleges that she received a $25.00 Gift Card for Christmas from her grandmother in December 2004. She used the Gift Card more than twelve months after it was given to her and she learned that the card had decreased by approximately $8.00 due to "service fees."

The Complaint sets forth three Counts: (1) Unfair Merchandising Practices; (2) unjust enrichment; and (3) breach of contract. Doerhoff alleges that the Monthly Fee assessed on the Gift Cards is misleading, unlawful and improper.

Under her breach of contract claim, Doerhoff relies on the existence of the Gift Card Agreement to assert her claim. Specifically, plaintiff alleges that defendant breached its contractual obligation to provide the customer, or the gift card recipient, with the actual dollar amount placed on the card by charging the Monthly Fee. The Gift Card agreement contains an Arbitration Provision. The relevant provision for deciding the instant motions is as follows:

> As used in the Arbitration Provision, the terms "we" and "us" shall for all purposes mean <u>American Express Travel Related Services Company, Inc., its parent, wholly or majority owned subsidiaries, affiliates, licensees, predecessors, successors, and assigns and all of their agents, employees, directors and representatives</u>. In addition, "we" or "us" shall include any third party using or providing any product, service or benefit in connection with any Cards (including, but not limited to merchants who honor the Card, third parties who use or provide services, debt collectors and all of their agents, employees, directors and representatives) if, and only if, such third party is named as a co-party with us (or files a Claim with or against us) in connection with a Claim asserted by you. (emphasis added)

The Arbitration Provision goes on to state that if either party elects to resolve a Claim by

3

arbitration, the Claim shall be arbitrated on an individual basis. The Agreement also includes a New York choice-of-law provision: "This agreement is governed by the laws of the State of New York, USA, excluding choice of law principles." The Arbitration Provision is not negotiable and is presented on a "take it or leave it" basis. The Gift Card Agreement provides that use of the Gift Card constituted consent of all of the terms of the Agreement.

## II. Discussion

The threshold issue to be determined in this case is whether there exists an agreement between plaintiff and GGP to arbitrate her disputes with GGP. "In deciding whether to stay litigation and compel arbitration under the Federal Arbitration Act, a court must first consider whether the parties have agreed to arbitrate the underlying dispute." Fleet Boston Robertson Stephen, Inc. v. Innovex, Inc., 264 F.3d 770, 771 (8th Cir. 2001). Plaintiff argues that such an agreement between herself and GGP does not exist. She contends that based on the language of the Arbitration Provision, there is only an agreement for plaintiff to arbitrate her claims with American Express, its parent, wholly or majority owned subsidiaries, affiliates, licensees, predecessors, successors, and assigns and all of their agents, employees, directors and representatives - and GGP is none of these. American Express is not a party to this lawsuit. GGP counters that it has standing to compel arbitration under the Gift Card Agreement, and the judicial admissions contained in plaintiff's Complaint constitute irrefutable proof that GGP is a party with standing to compel arbitration.

The Court granted permission for the parties to engage in limited discovery on the arbitration issue only. Based on the record before the Court, the relationship between GGP and American Express has been termed as a "distributorship" and a "partnership" by GGP and

4

American Express personnel. The relationship between GGP and American Express relating to the sale of the Cards at issue is governed by a contract between the two entities (the "Contract"). The Contract states that: "The parties agree that in performing their respective responsibilities pursuant to this Agreement, they are independent contractors and their personnel are not agents, subcontractors, representatives or employees of the others for tax purposes or any other purposes whatsoever . . ."

Plaintiff argues that GGP is not an entity that is connected to any nomenclature connected to American Express in the Arbitration Provision and therefore she cannot be forced to arbitrate her claims with GGP. Defendant counters that plaintiff cannot have it both ways and argues that plaintiff is bound by the Arbitration Provision based on equitable estoppel or the "intertwined test." GGP and American Express's business products are so intertwined that both may enforce the Provision. Plaintiff relies on the existence of the Gift Card Agreement - which includes the Arbitration Provision - as the basis for her breach of contract claim, yet claims that GGP is not a party to the Arbitration Provision.

The Court finds that based on the Counter Mat, as well as the Gift Card Agreement that each customer receives with their Gift Card, this is a contract with both GGP as well as American Express. It does not necessarily matter that the Contract between GGP and American Express indicates that they are independent contractors. As in an agency relationship, it is often a question of authority and appearance. There still at least remains an issue as to whether GGP could be considered an "affiliate" of American Express. According to this Court's research, "affiliate" means "an organization that is related to another organization through some type of control or ownership." Wall Street Words, dictionary.com (Nov. 2, 2006). Based on the

5

evidence adduced so far, American Express exercises some amount of control over GGP. For example, the "GGP Mall Gift Card Terms and Conditions" is copyrighted by American Express. Further, the Gift Cards are issued by American Express and GGP distributes them. Further, American Express has received approximately $7,000,000 in revenue since the program's inception. To say that GGP is not a party to the terms and conditions contained in the Counter Mat, an argument plaintiff makes, is disingenuous at best. The terms and conditions are entitled "The GGP Mall Gift Card Terms and Conditions," and discuss GGP throughout its entirety.

Based on this evidence it appears inevitable that American Express will become involved as a party to this lawsuit. Perhaps plaintiff attempted to artfully craft the allegations and Complaint in such a way to avoid having American Express as a party, mindful that such would lead to binding arbitration. It is clear, and plaintiff concedes as much, that American Express is a party to the Arbitration Provision. Accordingly, the Court finds that both GGP and American Express are parties to the Arbitration Provision.

This being said, it does not necessarily lead to the conclusion that plaintiff must arbitrate her claims with defendants GGP and American Express. The issue still remains as to whether the provision is enforceable. Plaintiff argues that even if GGP were a party to the arbitration provision, it should not be enforced because to do so would be unconscionable. It is this issue to which the Court now turns.

The Arbitration Provision at issue here was made pursuant to a transaction involving interstate commerce, and "shall be governed by the Federal Arbitration Act, 9 U.S.C. Sections 1-16, as it may be amended (the "FAA")." Section 2 of the FAA provides that binding arbitration provisions in contracts "evidencing a transaction involving [interstate] commerce . . . shall be

6

valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The resolution of disputes through arbitration is favored and arbitration provisions should be enforced as written. See Buckeye Check Cashing, Inc. v. Cardegna, ___ U.S. ___, 126 S. Ct. 1204, 1207 (2006); Hoffman v. Cargill Inc., 236 F.3d 458, 461 (8th Cir. 2001); Baesler v. Continental Grain Co., 900 F.2d 1193, 1195 (8th Cir. 1990).

The Eighth Circuit has mandated that "[b]efore a party may be compelled to arbitrate under the Federal Arbitration Act, the district court must engage in a limited inquiry to determine whether a valid agreement to arbitrate exists between the parties and whether the specific dispute falls within the scope of that agreement." Houlihan v. Offerman & Co., 31 F.3d 692, 694-95 (8th Cir. 1994). Accordingly, the Court will conduct such an inquiry.

1. Whether a valid agreement to arbitrate exists

An arbitration provision governed by the FAA is presumed to be valid and enforceable. See Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 226 (1987). "[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." Id. at 24-25.

An agreement to arbitrate is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; see also Houlihan, 31 F.3d at 695. Ordinary contract defenses, such as "fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements." Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 682 (1996).

7

The analysis of whether a valid agreement to arbitrate exists in this case depends on what state law is applied. "When deciding whether the parties agree to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995). The parties are in disagreement as to which state law applies.

Defendant argues that the Agreement in this case contains an enforceable New York choice-of-law provision. The validity of the choice-of-law provision is governed by § 187 of the Restatement (Second) of Conflicts of Laws. Baxter Int'l, Inc. v. Morris, 976 F.2d 1189, 1196 (8th Cir. 1992). Under Section 187(2)(a), the chosen state in the choice-of-law provision must have a substantial relationship to the parties or transaction at issue or reasonable basis for the parties' choice. Next, Section 187(2)(b) requires that a court determine whether: (1) application of New York law would be contrary to a fundamental policy of the default state; (2) Missouri has a materially greater interest than New York in the determination of the issues; and (3) Missouri law would even apply as a default under Section 188 in the absence of an effective choice of law by the parties. Id. Plaintiff contends that even based on this analysis, Missouri law would still apply because of policy considerations.

The Court finds that Section 187(2)(a) is satisfied. Plaintiff was a resident of Ithaca, New York for about 7 years, including when she used the GGP Gift Card for the transaction at issue, and American Express, the issuer of the GGP Gift Cards, and a party to the Gift Card Agreement, is located in New York.

Section 187(2)(b) really encompasses the context of this dispute - whether the Arbitration Provision and its terms are contrary to a fundamental policy of Missouri. It is clear that states

8

have an interest in business that is conducted within the state and this is a "back door" to otherwise binding choice-of-law provisions contained in contracts that are entered into within the State. Plaintiff argues that while the Arbitration Provision may be enforceable under New York law, it would not be under Missouri law, and the fact that New York law would preclude class action treatment of this case, is contrary to the fundamental policy of Missouri regarding the right to jury trial, fundamental due process, and is a valid contract defense of unconscionability.

Based on New York law, the Arbitration Provision would likely be enforceable. New York law has consistently held up arbitration provisions, including terms requiring arbitration on an individual basis (thus, precluding class action treatment) and the terms relating to the costs of arbitration and have not found such provisions to be unconscionable. See, e.g., Tsadilas v. Providian Nat'l Bank, 13 A.D.3d 190-91 (N.Y. App. Div. 2004); Hayes v. Country Bank, 26 A.D.3d 465 (N.Y. App. Div. 2006); Ranieri v. Bell Atlantic Mobile, Inc., 304 A.D.2d 353, 354 (N.Y. App. Div. 2003) ("[W]e are in accord with authorities holding that a contractual proscription against class actions, such as contained in the [arbitration] Agreements, is neither unconscionable nor violative of public policy" (citing Boomer v. AT&T Corp., 309 F.3d 304, 419 (7th Cir. 2002)). Upon review this Court is unable to find any Eighth Circuit case law on the issue of the public policy in Missouri regarding arbitration or contract provisions precluding class action treatment.

The Court now finds that application of New York law in this case would be contrary to the fundamental policy of Missouri because it is unconscionable. To reach such a conclusion, the Court will apply Missouri unconscionability standards.

An analogous case found in Missouri is Whitney v. Alltel, 173 S.W.3d 300 (Mo. Ct. App.

9

2005).  In Whitney, the court discussed that in order for a contract provision to be found unconscionable, a court must look at "the totality of the circumstances, weighing evidence of both procedural and substantive unconscionability . . . ."  Whitney, 173 S.W.3d at 309. Procedural unconscionability involves the contract formation itself - including pressure by one of the parties, fine print, bargaining position, and misrepresentation.  Funding Sys. Leasing Corp. v. King Louie Int'l, Inc., 597 S.W.2d 624, 634 (Mo. Ct. App. 1979).  Substantive unconscionability is an "undue harshness in the contract terms themselves."  Id.

Procedurally, the Arbitration Provision was presented in fine print and given in a "take it or leave it" fashion.  Further, the Claimant in an arbitration action is required to pay the filing, administrative, and hearing fees for any claim initiated.  Customers were not allowed to negotiate about the Provision.  The Provision was included in the folder of materials given to the individual who received the Gift Card as a gift.  Not only was the ultimate end user likely not present at the purchase of the Gift Card, the Arbitration Provision had to be found in fine print within the literature, within the sleeve, which held the Gift Card.

Substantively, the terms of the Provision effectively preclude class treatment of claims that often involve a few dollars per claimant.  The Court believes that this case is similar to Whitney, in that

> [by] itself, such a claim would not be economically feasible to prosecute. However, when all of the customers are added together, large sums of money are at stake. Prohibiting class treatment of these claims would leave consumers with relatively small claims without a practical remedy, and without a procedure (class actions) expressly provided for under Chapter 407 and the Missouri Rules of Civil Procedure.

Whitney, 173 S.W.3d at 309 (quoting the trial court below and agreeing with such reasoning). See also Comb v. Paypal, Inc., 218 F.Supp.2d 1165, 1176 (N.D. Cal. 2002); Powertel, Inc. v.

Bexley, 743 So.2d 570, 575 (Fla. Dist. Ct. App. 1999). Furthermore, the Missouri Supreme Court has found that "[i]t is unconscionable to have a provision in an arbitration clause that puts all fees for arbitration on the consumer. This is particularly true when the cost-shifting terms could work to grant one party immunity from legitimate claims on the contract." State ex rel. Vincent v. Schneider, 194 S.W.3d 853, 860 (Mo. 2006)

      The Agreement forces customers to individually arbitrate claims that only amount to a few dollars and pay the accompanying fees. Few plaintiffs would likely undertake such a scheme if not allowed to join in a class action. At the same time there is evidence that American Express has received in excess of $7,000,000 from the "service fee." There is yet to be an indication in the case as to what "service" is provided for such a fee.

      The FAA and the policy favoring arbitration of claims does not give a party *carte blance* to eliminate the ability of consumers to challenge provisions of an unconscionable contract. "Standing alone, a public policy favoring arbitration is not enough to extend the application of an arbitration clause far beyond its intended scope." Greenwood v. Sherfield, 895 S.W.2d 169, 174 (Mo. Ct. App. 1995). Likewise, the Court believes the public policy favoring arbitration cannot extend the application of the FAA far beyond its intended scope. This is why state common law is an explicit exception to the statute. An arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

      Therefore, the Court finds that the Arbitration Provision in this case is unconscionable regarding all provisions invoked by defendant. Therefore, the case will not go to arbitration and may continue as a putative nationwide class action.

2. Whether the specific dispute falls within the scope of that agreement

As the Court has determined that no valid agreement to arbitrate exists, the Court need not reach the issue of whether this dispute falls within the scope of the agreement.

Finally, the Court has determined that American Express Travel Related Services Company, Inc. will be joined as a party to this case. Pursuant to Fed. R. Civ. Proc. 19(a), the Court may join a party if it determines that a party must be joined if in the party's absence complete relief cannot be accorded among those already parties.

> A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties . . . If the person has not been so joined, the court shall order that the person be made a party.

Fed. R. Civ. Proc. 19(a)(1).

### III. Conclusion

Accordingly, based on the above, it is hereby

ORDERED that Defendant's Motion to Compel Arbitration and to Stay Proceedings Pending Arbitration (Doc. # 15) is denied. It is further

ORDERED that pursuant to Fed. R. Civ. Proc. 19, American Express Travel Related Services Company, Inc. shall be joined to this lawsuit. Plaintiff shall have 60 days within which to file an Amended Complaint and render service of process.

    /s/Scott O. Wright
    SCOTT O. WRIGHT
    Senior United States District Judge

Dated: November 6, 2006

12

Case 2:06-cv-04099-SOW   Document 42   Filed 11/06/06   Page 12 of 12